The final case this morning is number 231048, Plotagraph, Inc. v. Lightricks, Ltd. Okay, Mr. Walker. Your Honors, may it please the Court, I'm David Walker with Snyder Wallace for the appellants. With me are Sean Hunter and Marcellus McZeel. We're here on appeal from a Rule 12 dismissal where the District Court erred in disregarding the presumption of validity, ignoring the claim language and technical solutions presented in the patent specifications. The claims at issue are drawn to systems and methods for automated digital pixel shifting, instilled digital photos and videos. The District Court erred in its analysis under both steps of the Alice test. Under Step 1, the Court improperly found that the claims were drawn to an ineligible abstract idea. This was error because the claimed activity, automatic shifting of pixels, cannot be performed by hand. There is no manual counterpart. According to the patent, how is the shifting accomplished? Using the computer. That's it? Yeah, with computer code. According to the claims. The algorithm are the steps of the claims that follow the preamble. For example, claim 7 of the 342 patent, appendix 57. The final element of the claim is shifting the first set of pixels along the nonlinear pathway. We're in the shifting. The first set of pixels comprises rendering and re-rendering in a loop. The first set of pixels being shifted. We could go through the whole claim. There are four elements, four steps. That's the method claim. That is what we claim. And those are the inventive concepts. How is it ultimately that the patent describes the insertion of those choices? It's, for example, in column 5. What you come up with, just going back to the claim. You receive a first indication of a first starting point. The first three, yes, that's correct. Diamond V. Deere does claim the user did all of it until at the end there was a computer. It doesn't say how the computer does it. It just says the computer does it. And in the specification are tools that users can use to have the computer shift the pixels. This ordered combination... I was going to take you there. Would you argue that the claims have steps that have to be performed in a particular order? Correct. In order for the automation to occur, the shifting of the pixels. Exactly right. Yeah, because it's our contention that this ordered combination has not before been well understood, routine, or conventional. And there's no evidence. The only evidence we have is the record, the intrinsic record. There's no evidence except attorney argument otherwise. I think that the invention is somewhat remarkable in certain ways. It certainly garnered one of the highest sought out recognitions in the world of applications, which we all have running on our phones. And this is an application we're talking about that you have, correct? That's right. All right. And it was the most downloaded application in what, 2017? Something like that, yes. The problem is your complaint. The problem is the facts that you allege in your complaint. You know, it's like a Christmas tree that's unadorned. You don't have enough there in order to survive. So do you want to address that particular issue? Well, we do say that the Lightrix software performs the claim steps of our claims. For example, in patent, the 017 patent. I mean, we could read the language. For example, at 278. Is this your second amended complaint? Yes. And the court didn't rule on it? I guess they did. Well, the 12B6 dismissal is what was the ruling. Look at paragraph nine of your complaint. The patent's in suit. That's the only statement in the complaint you make about the steps, correct? Well, we say in other places that the Lightrix software infringes in accordance with the steps of the other patents. In each patent, we say that. And so that's what I was referring to when I was referring you to page 278. In the middle of paragraph 50, it says plaintiffs contend that the accused program was specially adapted for and has no substantial non-infringing use apart from using the accused program to automatically shift pixels in accordance with the steps of claims 1-5-7 of the 017 patent. We're saying specifically what is being infringed. I mean, we don't have to do more than that, I believe. Your claims here, looking at claim one, says the computer has executable instructions. Yes. The specification and the claims never tell us what those executable instructions are. An expert in the art would be able to take these claims and write computer code to do exactly that. Okay, but that computer code is not described in the patent, right? Outside of the claims and outside of the telling what the computer program does. The computer code described in the patent. You said someone is skilled at this. Specifically, no. Specifically, no. Right? It's not there. Right? Yes, Your Honor. Okay. So, in the specification, for example, look at the 017 patent column 3, it says the user controls these things. The user is making these decisions, right? The user inputs information into the application. That's right. Okay, let me catch up again to where you are, sir. Your Honor, on the 017. The 017 column 3. Line 49 to the bottom. The user controls the speed, magnitude, direction of this, and other various attributes. Yes. Right? Uh-huh. Yes, Your Honor. And all it says is that the computer translates that somehow, right? Correct. A practitioner in the art would be able to take this information and create computer code that would do exactly what the claims say. And the claims are the method, the concrete steps that need to be performed for the result to be achieved. We're not claiming the result. We're not claiming the effect. We're claiming the method to achieve the result that is having the perception of movement within digital photos. The claims were amended during prosecution. Oh, let me go back. The claimed activity cannot be performed mentally. The Federal Circuit, speaking of rendering pixels, said that requiring manipulating computer data structures can't be done as a practical matter entirely in a human's mind. That's CyberSource 654 F3rd 1366 of 1376. I'll reserve the remainder of my time for rebuttal, unless you have a question. But the fact that you assert that this result can be achieved automatically, that doesn't necessarily help you. It doesn't? No. Well, the claims were amended. Just the fact that you can use a computer to do something automatically is not going to take you to safe lands. Okay. But we have to use a computer because no human can shift digital pixels with their mind or on pencil and paper. It can't be done outside of the computer. Well, that would have been good to see in your complaint. Okay. It doesn't tell us how the computer does it. It's just like saying use a computer to do it. In our past cases, you said that's not enough for patent-eligible. Right. If you have an abstract idea, and we contend that our claims are not abstract ideas, our claims don't go to the abstract idea itself. They go to the method of how you perform getting to the result that is a digital photo with the perception of movement within it. All right. We'll reserve the rest of your time. Mr. Greeson. Thank you, Your Honor. Robert Greeson with Norton Rose Fulbright, Dallas office. And I have with me Ms. Stephanie DeBrow and Norton Rose Fulbright, New York office. It may be helpful to discuss what these claims look like with respect to other cases that have been before this court, because I think it follows on to the discussion that Judge Renger was just having with my colleague. That is, when my colleague was asked how shifting was performed, he responded that the computer performs the shifting. But that's not enough. As this court's found in Erickson and the FICET case and several others, that the mere automation of an otherwise human process does not make a claim any less abstract. And when there were specific questions about the algorithm itself. But if you're not claiming automation, but you're claiming orderly steps, is that patent-eligible? I think it depends on the orderly steps and whether or not they suffice to provide an inventive concept. So you would find that that would be patent-eligible? That what would? What I just told you. The orderly steps? I think there are. You're not claiming automation. I mean, otherwise, maybe all software patents would be patent-eligible because they all involve automation. Sure. So that can't be the end all, the beginning and the end. I agree. So if a claim is directed to a method of orderly steps, and if you follow these steps, you achieve this result. In this case, it's automation of pixel shifting. Sure. So there are certainly cases where the claims have had sufficient detail to provide an algorithm that's meaningful, a series of orderly steps. McRow would be a good case. Infish would be a good case. But I think McRow is helpful here because it further underscores the deficiencies in these claims. McRow was fundamentally different because it provided an in-depth rule set. In the claims itself, McCork found that it was the incorporation of those rules. Was McRow a 4B6 case? I don't recall right now, Your Honor. I don't recall. That said, McRow also is fundamentally different because its claims obviated the need for human interaction and manual judgment-making and the like. Here, when my colleague pointed to where the algorithm was found, he talked about the steps that precede the general pixel-shifting step. But as has been briefed, each of those is dictated by the user. The user picks the starting point, the ending point, picks the shape of the path upon which pixels are supposed to shift, picks the width of that path, picks how fast the pixels will be shifted. So after all of those user-initiated steps, those user-defined steps, there's a general shifting step. In McRow, the animator picked on a matrix, let's say the human face, picked different points to where the automation is going to occur. In the prior. Yes, in order to mimic the human mouth when it makes a particular sound, like, oh. But in that case, that was found to be paternological. I disagree. My understanding is that in the prior. You disagree that it was found to be paternological? I disagree with the premise that it was human selections involved in the claims that were found to be paternological. In the prior art, the user was left to mark certain points at which the phenom should make changes in appearances, things like that. My understanding is that in McRow, the claims obviated that requirement. And therefore, it was the rules that obviated that requirement lent the claims to patentability. What, in your view, would this, if this survived Pro B6, would this be patent eligible? I'm not sure I understand you. We're looking at, this case is about whether the plaintiff had sufficient pleading in this complaint in order to state a cause of action. No. The answer is no. Okay. Not at all. Not at all. And to your question earlier, McRow was decided on Rule 12c, judgment on the pleadings. My colleague also mentioned that, having read the claims, that one could compile code to effectuate the claim steps generally, as I understand. And if so, that belies the argument that any of the steps found in the claims would be anything other than routine, conventional, or well understood. And finally, you know, I point out that this, another problem with the claims themselves is that they're only directed to a result. There is no, you know, the preamble begins with method for shifting pixels, followed by user preparatory steps, and ends with shifting pixels. So in other words, we have a claim for shifting pixels by receiving user input in several instances, and then shifting pixels. There's no discussion of how. There's no description of an algorithm in a meaningful way that would give these claims the type of inventive concept that's required under the ALICE test. With respect to ALICE at Step 2, I think it's important to remember that the allegations in the complaint that certain features aren't well understood or routine are wholly conclusory. There's no factual predicates from which this court can infer that even if true, they're of legal significance. Further, under the Twombly-Iqbal standard, the court's only required to accept plausible allegations, not just allegations for the reason I just mentioned, they're not plausible. But further, even with respect to the claim features that are allegedly not well understood, routine, or conventional, again, if you look at those claim steps or the claim features, those are, again, user initiated. So whether it's a user selecting a mask, or what the shape of the mask looks like, or anchor points, or edges. Again, at the end of the day, what we have is a claim that is largely based on a user making selections through a generic interface, followed by a generic step of shifting pixels, and of course, all of which is implemented in a generic computer environment. So with that, unless the panel has additional questions, I will give my remaining time back to the court. Okay. Thank you. Thank you. So the only evidence in the record is the intrinsic record. So I guess what I'd like to do is let's go back to Claim 7 of 3.4.2 Patent, Appendix 57. Line 7? Claim 7 at Appendix Page 57. And so this record says that the abstract idea is shifting pixels to create the illusion of movement. And let's look at this claim and try to find claiming the illusion of movement. It's not in receiving a first indication of a first starting point. It's not in the next one, receiving through the user interface an indication of a nonlinear pathway. It's not in selecting a first set of pixels. Shifting pixels in animation, isn't it? It can be similar to animation. I won't argue with that. But this whole combination, shifting the first set of pixels, is not a claim to giving the perception of movement in a digital picture. It's just not. It is part of the method that gives us the perception of movement in a digital photo. But nowhere in this claim does it say this exact abstract idea. And like all the other independent claims in all five patents, these are all the same. You can examine all of them. It nowhere says shifting pixels to create the illusion of movement. The illusion of movement occurs because you have to do the methods of all these claims. Assuming we get by the problem with the shifting pixels, how do we do it? We submit that we can bring evidence to the court to show that somebody skilled in art can do this. In fact, a whole lot of people have. These kind of applications sprung up all over the world after our client put it out on the market. The other patent also says it was done before. Where does it say that? I'm sorry, Your Honor. I haven't seen that. What's been done? Oh, there's movement in pictures. If we're talking about column one, line 49 of these patents, let's look at that. It's in column one of 017. Okay. And I think, yeah. It talks about digital image software tools. It talks about... Yeah. Additional tools are desirable. It's aspirational. It doesn't say it's occurred. This line is aspirational. Additional tools are desirable for improving digital images, such as the ability to incorporate movement within an image. That's aspirational. It's in the wrong place. As a patent scrivener, I would not have put it in the background. It certainly sounds as though it was what was done earlier, right? Putting it in the background section. Respectfully, I disagree. Oh, it's in the wrong place. As a patent writer, yeah. But that's not what that line says. That line says additional tools are desirable, such as the ability to incorporate movement. That doesn't say that it's been done before. Okay. We're out of time. Thank you. Thanks, Dr. Jones, for the case. This is a matter that involves our time.